**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANTENEH ABTEW
724 Hamilton Street NW
Washington, DC 20011

Plaintiff

v.                                    Civil Action No.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Office of the General Counsel
20 Massachusetts Avenue, NW
Washington DC 20528

Defendant

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Introduction

1. Plaintiff, a citizen of Ethiopia, is seeking asylum here in the United States. He fears torture and death if he deported. He is scheduled for a hearing on his asylum application in February 2015, in Immigration Court, where defendant will attempt to deport him.

1a. Defendant has two documents in its possession: "Notes" of an asylum officer and an "Assessment" of an Asylum Officer. Defendant may use those documents in Immigration Court, against Plaintiff.

1b. Defendant refuses to give the documents to Plaintiff.
1c. Plaintiff is desirous of obtaining the documents because he wants to assist himself in Immigration Court and because he wants to assist other asylum applicants see justice.

1

1d. Plaintiff's counsel is employed by Catholic Charities of Washington, which is part of the Archdiocese of Washington. The two documents requested in this lawsuit will be useful to Catholic Charities ["CC"] in its activities:

1e. CC has represented asylum applicants for decades, and will continue to represent them for decades to come. CC wants all of its clients to see justice.

1f. CC regularly conducts trainings and seminars for lawyers representing asylum applicants.

1g. Lawyers at CC are members of other organizations, such as the American Immigration Lawyers Association [AILA] and the DC Bar Association, and are invited from time to time to speak at conferences on asylum.  CC lawyers write articles for ILW.com, Bender's Immigration Bulletin, and AILA; they attend public meetings at local asylum offices and at Headquarters, where they advocate for justice.

1h. CC wants to assist other lawyers, as they seek to obtain justice for their clients.

1i. CC wants to monitor and examine the work of asylum officers, to ensure that all asylum applicants obtain justice; are the officers doing their job properly? Are their training and internal quality control mechanisms sufficient? CC wants to assist Congress and the advocacy community in the implementation and improvement of the asylum system. CC wants to increase public awareness and to facilitate public oversight of the asylum system; CC wants to preserve the integrity of immigration court and asylum office proceedings.

2. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  This is also an action under 8 U.S.C. § 1229a (b) (4) (B), which gives aliens certain rights in Immigration Court.

<u>Jurisdiction and Venue</u>

3. This court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a) (4) (B), and 28 U.S.C. § 1331. This court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§2201-2202 and Federal Rules of Civil Procedure 57 and 65.

4. Venue in this district is proper under 5 U.S.C. § 552(a) (4) (B) and 28 U.S.C. § 1391(c) as all parties are located in the District of Columbia.

### The parties

5. Plaintiff Abtew is a native and citizen of Ethiopia. He is scheduled for an Individual Hearing on February 18, 2015 at the Arlington, VA Immigration Court, where he will seek asylum, pursuant to 8 U.S.C. § 1158.
   He also is seeking withholding of removal, pursuant to 8 U.S. C. § 1231 (b)(3). Plaintiff's A number is #205-360-853.

6. Defendant DHS is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f). DHS is responsible for enforcing federal immigration laws. DHS has possession and control over the documents sought by plaintiff. DHS is seeking to deport plaintiff from the United States and return him to the dictatorial regime holding power in Ethiopia.

### The asylum process

7. An alien fleeing persecution in his native country may apply for asylum here in the United States, pursuant to § 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158.

8. The alien is entitled to an interview before an asylum officer, who is employed by the DHS. At the interview, there is no court reporter and no recording device. The officer takes notes, often by hand.

8a. Asylum Officers are admonished to NOT state their personal opinions. "Interview notes…must not contain the asylum officer's subjective opinions….' [Asylum Office Basic Training Course, October 2001, "Note-Taking" page 9]. Officers are admonished to take "clearly written and comprehensive notes during the interview," because later many different persons may have access to the notes:   "…if interview notes are introduced as evidence in proceedings in Immigration Court, the applicant and representative are given a copy of the notes." [*Id.* at page 4].

8b. Notes are factual. *Martins v. United States Citizenship and Immigration Services,* 2013 U.S. Dist LEXIS 93892 (N.D. Cal. 2013).

Attached hereto are notes from an asylum officer in another case, which was furnished to counsel for plaintiff in 2011, in response to a FOIA request. [Exhibit #1].

9. After the interview, the officer may decide to grant asylum; in that case, the alien is pleased, and can start the process toward becoming a citizen of the United States.

10. However, the officer may decide that asylum should not be granted. In that case, he must prepare one of two documents:  1] "Notice of Intent to Deny," which sets forth the decision of the officer, and allows the applicant to rebut the decision, or 2] "Assessment to Refer," which also sets forth the decision of the officer.

<u>If the asylum applicant is in valid immigration status</u>

11. A Notice of Intent to Deny ["NOID"] is written if the alien-asylum applicant is in a valid immigration status, such as being a tourist ["B-2 status"] or being a student ["F-1 status"].  *See* Exhibit #2 for an example of a NOID.

12. An Assessment to Refer is written if the alien is no longer in valid status, such as being a tourist who overstayed his tourist visa. [This describes the Plaintiff]  *See* Exhibit # 3 for an Assessment which was filed in Immigration Court in 2001. *See* Exhibit # 4 for an Assessment which was attached to an opinion of the Ninth Circuit Court of Appeals, *Singh v. Gonzales*, 403 F.3d 1081, 1087 (9th Cir. 2005).  *See* Exhibit # 5 for an Assessment filed in Immigration Court in 2007.

13. The content of a NOID is very similar to the content of an Assessment.

14. NOIDS are disclosed to asylum applicants by the thousands. The disclosure of NOIDs does not harm the Defendant.

15.  If disclosure of NOIDs does not harm Defendant, then disclosure of Assessments will not harm Defendant.

16. The applicant has 16 days in which to respond to the NOID.  This response may change the mind of the asylum officer, and asylum is then granted.   If the officer does not change his mind, then the alien merely continues to live here in the United States as before [i.e. as a tourist or student].

<u>If the asylum applicant is NOT in valid immigration status</u>

17. An Assessment to Refer is written, if the applicant is out of status. For example, the applicant may have earlier been a tourist or a student, but at the time of the asylum officer decision, that status expired.

18. The asylum officer writes an Assessment to Refer, and then makes it and the entire file available to his supervisor.  The supervisor, from time to time, may talk to the asylum officer, and tell the officer to re-write the Assessment.  In that event, the officer writes a new Assessment, and makes it available to his supervisor.  The supervisor may write his initials on the Assessment, indicating his approval; however, the supervisor does not write anything.

18a. In the instant case, the supervisor did not write a single word on the notes of the asylum officer.  The notes were written 100% by the officer.

18b. In the instant case, the supervisor did not write a single word on the Assessment of the asylum officer.  The Assessment was written 100% by the officer.

18c. Asylum officers are instructed and trained that Assessments shall later be read and used by "a number of persons," including the "applicant and his or her attorney…"   The applicant and his attorney "may Submit a Freedom of Information Act [FOIA] request to obtain a copy of any assessment (and other information in the file)."  *See* page 11 of Decision *Writing Part I,* dated June 21, 2004.

19. The Assessment to Refer and the Notes of the asylum officer are not given to the applicant; however, they are given to the DHS lawyer who represents the government in Immigration Court.

19a. The asylum officer works in a division of the DHS known as "CIS," which stands for Citizenship and Immigration Services.

19b. The DHS lawyer works in a division of the DHS known as "ICE," which stands for Immigration and Customs Enforcement.

19c. At times, the DHS lawyer will use these documents in Immigration Court, to discredit the applicant. If the asylum officer relied on certain facts and information to deny asylum, it is "reasonable to expect" the government lawyer would use the same material against the applicant in immigration court. *Kaur v. INS*, 237 F.3d 1098 (9th Cir. 2001).

19d. The DHS lawyer may believe the documents are prior inconsistent statements; the lawyer would argue to the Immigration Judge that the applicant is inconsistent, therefore not credible; therefore, not deserving of asylum; therefore, applicant should be deported.

19e. The Board of Immigration Appeals has recognized that notes of the asylum officer, and any other evidence of what was said under oath during an asylum interview, may be considered by an immigration court. *In re R-S-J-*, 22 I&N Dec. 863, 872 (BIA 1990) ("It may be necessary to present the testimony of the asylum officer before the Immigration Court, together with notes and other evidence of what was said under oath.")

19f. The Board of Immigration Appeals has recognized that an asylum officer may testify in immigration court. *In re R-S-J-*, 22 I&N Dec. 863, 872 (BIA 1990).

20. The Notes of an asylum officer were used in Immigration Court in *Khattak v. Holder,* 704 F.3d 197 (1st Cir. 2013). The notes were cited in footnotes 1, 3, and 5. According to the asylum officer, Khattak said he was threatened with being beheaded. In Immigration Court, Khattak denied making such a statement. [note 3].

The Notes of an asylum officer were used in Immigration Court in *Sharma v. Holder,* 457 Fed. Appx. 614, 616, 2011 U.S. App. LEXIS 22112 (9th Cir. 2011). The applicant told the asylum officer she was physically attacked; but told the Immigration Judge that she was only threatened. The Immigration Judge ruled that the applicant was inconsistent, therefore not credible, therefore not deserving of asylum.

21. The handwritten Notes and also the Assessment to Refer were relied upon in *Sinani v. Holder,* 418 Fed. Appx. 475, 2011 U.S. App.

LEXIS 8187 (6th Cir. 2011).  According to the Notes of the officer, the applicant told the asylum officer that police officers were silent after they raped her [and hence did not reveal their motive]; but told the Immigration Judge that the police officers called the Mayor on the phone, and talked to him, in her presence, and clearly stated their motive.

22. When asked about this inconsistency, the applicant stated she did not remember what she told the officer, or that she did NOT make such statements to the officer.  Even though the asylum officer did not testify in court, the Immigration Judge believed the Notes of the officer over the live testimony of the applicant.

The Notes and also the Assessment to Refer were relied upon in *Kudryashov v. Holder,* 492 Fed. Appx.734,  2012 U.S. App. LEXIS 16862 (9th Cir. 2012).  The Immigration Judge asked the applicant if he had made certain statements to the asylum officer [at *6]. The applicant told the Judge he did not recall making some of the statements. [The case was remanded, in part because the applicant had not been given the opportunity to review the Assessment before his merits hearing and the asylum officer did not testify at his removal hearing. *Id.* at *5.

A "detailed assessment" of an asylum officer was relied upon in *Sacko v. Holder,* 510 Fed. Appx.409,  2013 U.S. App. LEXIS 576 (6th Cir. 2013).  Sacko told the asylum officer he had been detained for two weeks, but then told the Immigration Judge he had been detained for seven months. He told the asylum officer he was not beaten; he told the Immigration Judge he was beaten with batons.  The Immigration Judge ruled that Sacko was not credible.

An Assessment to Refer was used in *Yu v. Holder*, 693 F.3d 294, 296 (2d Cir. 2012).

23. The Court can take judicial notice that busy officers will, from time to time, make mistakes.  The Eleventh Circuit noted an error in an Assessment in *Ido v. U.S. Att'y Gen.,* 480 Fed. Appx. 972, 2012 U.S. App. LEXIS 14029, at *8. (11th Cir. 2012) (the year of the first arrest was written down in error).

24. The Ninth Circuit criticized reliance upon an Assessment in

7

*Singh v. Gonzales*, 403 F.3d 1081, 1087 (9th Cir. 2005), deeming it "potentially unreliable." The Court attached a copy of the Assessment as an Appendix to its decision. [It is attached to this complaint as Attachment 3.]

Asylum officers rely upon materials not available to the applicant

25. 8 C.F.R. section 208.12(a), [2013] entitled *Reliance on information compiled by other sources,* is just one sentence long, and states that the asylum officer may rely on material from the Department of State "or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions."

25a. After the interview, the asylum officer is permitted, and encouraged, to do his own research and fact-finding. The officer is not bound by Fed. R. Evid. 201(b) which refers to facts capable of accurate determination by resort to "sources whose accuracy cannot reasonably be questioned." Whatever facts, theories, or inferences garnered by the officer are put into the Assessment without notice to the applicant. The applicant is not given any opportunity to rebut such facts or inferences.

25b. The asylum officer is not required to give a citation to the record in support of an asserted fact. Local Civil Rule 7(h) is not binding on the officer. *See  Perry v. Shinseki*, 783 F. Supp. 2d 125, 131 (D.D.C. 2011). He is not required to create and establish a record.

26. In the Assessment for Ms. Tjew,# 079-476-365, the officer writes "The RIC received information from ICANET [Indonesian Chinese and American Network] in an email dated March 28, 2001." *See* Attachment 2. The officer does not describe what the "RIC" is. The officer does not attach a copy of the email. The officer does not state what individual wrote the email, and does not state whether the individual was trustworthy or reliable.

27.  In the Assessment to Refer for Mr. Rebeiro, A # 073-163-139, the asylum officer quoted from a publication of the Department of State entitled, "Bangladesh: Profile of Asylum Claims."  This publication is NOT available to the public.

28.  In an Assessment to refer dated September 30, 1999, the asylum officer quoted from this source: "DIRB, ZAR27047.FEZ, *Zaire, Information on events…*3 June 1997, published on UNHCR Refworld CD-ROM." [Italics in the original].  This source is too obscure to be found.

28a. In an Assessment for Mr. Tuang, # 077-870-603, the Asylum Officer made a finding "based upon guidance from Asylum Branch Headquarters, dated May 27, 1998, HQ Memo (HQASM 120/9.7.1).  This source is not available to the public.

29. In the instant case, the defendant deemed plaintiff Mr. Abtew "not credible" because of inconsistencies between his testimony and "other evidence."  The defendant has not yet informed plaintiff as to what that evidence was.

<u>Asylum applicants had some rights taken away in 1997</u>.

30.  8 C.F.R. § 208.12(a) was amended in 1997.

In 1996, subsection (a) contained an additional sentence:

Prior to the issuance of an adverse decision made in reliance upon such material, that material must be identified and the applicant must be provided with an opportunity to inspect, explain, and rebut the material, unless the material is classified under E.O. 12356.

[*see* 62 FR 10312 (3/6/97).]

§ 208.12(a) was amended in 1997: it no longer contains this sentence.  After1997, and currently, an officer may rely upon material *not disclosed* to the applicant.

§ 208.12(b) provides that "this part" does not entitle the applicant to "conduct discovery," however, "Persons may continue to seek documents available through a Freedom of Information Act request."

<u>If the asylum officer made a mistake, the applicant needs to know well in advance of his deportation hearing.</u>

31. The Assessment may contain errors made by the Officer. In that event, the applicant will be very surprised in court.  It is unfair to the applicant to be taken by surprise in court, by use of a statement written by someone else.  When a serious mistake is made by the Officer, the applicant might be able to resolve it informally or at a pre-trial conference. The Immigration Judge, no doubt, would prefer that the parties solve such a problem themselves. If not, applicant could issue a subpoena for the Officer, so the alien can cross-examine him in Immigration Court.  The Officer might admit he made a mistake; or, the Immigration Judge might conclude that the Officer made a mistake.

32. The alien needs to know several weeks before the court hearing about the need for a subpoena, in order to get it served. The Immigration Judge will want to know how long a hearing might take, and which witnesses will testify.  Disclosure of the Assessment will benefit the Immigration Judge hearing the case, and will benefit the Immigration Court as well.

<u>The DHS has disclosed notes and Assessments in the past</u>

33. The DHS has been inconsistent concerning disclosures of notes and Assessments.  As evidenced by the Assessments which are attached to the complaint, the DHS at times has given Assessments to applicants before trial begins in Immigration Court.  As evidenced by Exhibit 1, the DHS has given notes of officers to applicants.

34. There was a time period, perhaps during the years 1998-2007, where notes and Assessments to Refer were easily made available to asylum applicants.  During this time period, and after: a] there was no "injury to the quality of agency decisions;" b] "open and frank discussions" inside the Asylum Office were not discouraged; c] there was no "premature disclosure of proposed policies;" d] the public was not "confused" or "misled" by the disclosure of "reasons that were not in fact ultimately the grounds for the agency's decision; and e] there was no effect on "the efficient operation of the government."

35. On January 30, 2012, in the Arlington VA Immigration Court, the DHS handed a copy of the Assessment of Ms. Nyima Sarr, # 087-665-034, to the Immigration Judge, who read it. Counsel for Ms. Sarr, counsel for

10

DHS and the Judge discussed the Assessment, on the record.  Counsel for Ms. Sarr had not read the Assessment until that minute in open court.

### Procedural history

36. Plaintiff was born in Ethiopia and arrived in the United States on February 17, 2012.  He applied for asylum and interviewed at the Arlington Asylum Office on October 9, 2012.

37. The asylum officer took 10 pages of notes of what she understood the Plaintiff said that day.  On that day, Plaintiff used an interpreter.

38.  After the interview, the asylum officer typed on her computer an Assessment, which is three four pages long.  The Assessment was given to the officer's supervisor, who initialed his concurrence.

39. The supervisor wrote nothing on the notes of the officer.

40. The supervisor wrote no words on the Assessment.

41.  The supervisor instructed staff at the Asylum Office to deliver the notes and the Assessment to the DHS lawyer who works at the ICE office at 1901 South Bell Street, Arlington VA.

42.  The asylum office ordered Plaintiff to appear at the Immigration Court at 1901 South Bell Street.

43.  Plaintiff was given a Referral Notice, which states in part that he was deemed not credible on the basis of:

> "Material inconsistency(ies) between your testimony and application and/or other evidence."

44. Plaintiff was not given a copy of the Notes or the Assessment.

45. Plaintiff does not know if there was just one inconsistency, or if there were more than one.  The word "inconsistency(ies)" is confusing.

46. Plaintiff was told there is an inconsistency between his testimony "and/or" other evidence.  The word "and/or" is confusing.

46. Plaintiff was not told what the "other evidence" was.

47. Plaintiff does not know if the "other evidence" was reliable. Plaintiff has not yet been given the opportunity to rebut this "other evidence."

8 C.F.R. § 208.12(b) provides that "this part" does not entitle the applicant to "conduct discovery," however; "Persons may continue to seek documents available through a Freedom of Information Act request."

48. Plaintiff does not know how accurate the Notes and Assessment are.

49. On November 11, 2012 Plaintiff made a FOIA request of the notes and Assessment of the asylum officer.

50. Defendant responded to plaintiff's request, but did not provide the notes and the Assessment.

51. Plaintiff appealed the response to the USCIS FOIA appeals office. Defendant denied the appeal, via a letter dated March 13, 2013. *See* Exhibit #6.

52. The notes which were written by the asylum officer are now in the "A-file" and are in the possession of the DHS lawyer at 1901 South Bell Street.

52a. The Assessment written by the asylum officer is now in the "A-file" and is in the possession of the DHS lawyer at 1901 South Bell Street.

52b. That lawyer believes that he may use the notes and also the Assessment at the next Immigration Court hearing. It is unfair and incongruous in American jurisprudence for one party in litigation to have and use documents not possessed by the other party. It is unfair for a party to disclose documents in one forum, but refuse to disclose them in another forum.

<u>Exhaustion of administrative remedies</u>

53. Plaintiff has exhausted any and all administrative remedies with defendant.

### FIRST CAUSE OF ACTION

54. Plaintiff repeats, alleges and incorporates the allegations of paragraphs 1-53 as if fully set forth herein.

55. Plaintiff has a legal right under FOIA to obtain the notes of the asylum officer, and no legal basis exists for defendant's failure to make the notes available.

56. Defendant has violated the FOIA, 5 U.S.C. §§ 552(a). Defendant's wrongful withholding of the agency record violates the FOIA, § 552(a) (3) (A).

### SECOND CAUSE OF ACTION

57. Plaintiff repeats, alleges and incorporates the allegations of paragraphs 1-56 as if fully set forth herein.

58. Plaintiff has a legal right under FOIA to obtain the Assessment of the asylum officer, and no legal basis exists for defendant's failure to make it available.

59. Defendant has violated the FOIA, 5 U.S.C. §§ 552(a). Defendant's wrongful withholding of the agency record violates the FOIA, § 552(a) (3) (A).

### THIRD CAUSE OF ACTION

60. Plaintiff repeats, alleges and incorporates the allegations of paragraphs 1-59 as if fully set forth herein.

61. The burden of proof "is on the applicant to establish that the applicant is a refugee." 8 U.S.C. § 1158(b) (1) (B) (i). "There is no presumption of credibility." 8 U.S.C. § 1158(b) (1) (B) (iii). To assist applicant in meeting these burdens, Congress has also provided that the alien "shall have a reasonable opportunity to examine the evidence against him, to present evidence on the alien's own behalf, and to cross-examine witnesses…" 8 U.S.C. § 1229a (b) (4) (B).

62. The notes of the Asylum Officer are "evidence against" plaintiff.

63. The Assessment of the Asylum Officer is "evidence against" plaintiff.

64. Plaintiff is not being given "a reasonable opportunity to examine the evidence against him."

65. Defendant's actions are improperly infringing upon plaintiff's rights as outlined above.

WHEREFORE, plaintiff requests that judgment be entered in his favor against defendant and that the court:

a) Order defendant to disclose the notes of the asylum officer to plaintiff forthwith;
b) Declare that defendant's failure to disclose the notes violates FOIA;
c) Declare that defendant's failure to disclose the notes violates plaintiff's rights under 8 U.S.C. § 1229a (b) (4) (B).
d) Order defendant to disclose the Assessment to plaintiff forthwith;
e) Declare that defendant's failure to disclose the Assessment violates FOIA;
f) Declare that defendant's failure to disclose the Assessment violates plaintiff's rights under 8 U.S.C. § 1229a (b) (4) (B).
g) Enjoin defendant from failing to disclose notes and Assessments in the future;

h) Award plaintiff reasonable attorney fees and costs pursuant to 5 U.S. C. §552(a) (4) (E) and 28 U.S.C. § 2412; and

i) Grant all other such relief to plaintiff as the Court deems proper and equitable.

    Respectfully submitted,

    Attorney for Plaintiff


    David L. Cleveland
    DC Bar # 424209
    Catholic Charities of Washington
    924 G Street, NW #125
    Washington, DC 20001
    [202] 772-4345 Fax: [202] 386-7032
    1949.david@gmail.com