# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ANTENEH ABTEW,

          Plaintiff,

      v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

          Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 13-1566 (ABJ)

## MEMORANDUM OPINION

In this case, plaintiff Anteneh Abtew asks the Court to order defendant Department of Homeland Security to provide the Assessment to Refer ("Assessment") prepared by the asylum officer who conducted the initial review of plaintiff's asylum application as well as the asylum officer's notes pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), (Counts I and II). Compl., Prayer for Relief, ¶¶ a, b, d, e [Dkt. # 1]. The complaint also seeks a declaratory judgment that defendant's withholding of the Assessment and notes violated plaintiff's rights under 8 U.S.C. § 1229a(b) (2012) (Count III). *Id.* ¶¶ c, f.

During the pendency of the case, defendant released the asylum officer's notes to the plaintiff, rendering Count I moot. The parties then filed cross-motions for summary judgment on the remaining two counts. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Dkt. # 17]; Def.'s Mem. in Supp. of its Mot. for Summ. J. & Opp. to Pl.'s Mot. ("Def.'s Mot.") [Dkt. # 23]. After a review of the Assessment *in camera*, the Court finds that the Assessment is protected by the deliberative process privilege and that the privilege has not been waived. It also finds, however, that the initial factual recitation contained in the first six paragraphs is not deliberative and is reasonably

segregable from the deliberative portion of the document. As a result, the Court will grant defendant's motion for summary judgment in part and deny it in part, and it will grant plaintiff's motion for summary judgment in part and denying it in part with respect to Count II. The Court will also dismiss Count III because it is not ripe.

## BACKGROUND

### I. LEGAL FRAMEWORK

#### A. The asylum application process.

Individuals seeking asylum in the United States may file an application for asylum with the United States Citizenship and Immigration Services ("USCIS"), which is a component of the Department of Homeland Security ("DHS"). Def.'s Statement of Material Facts as to which there is no Genuine Dispute ("Def.'s SOF") ¶ 4 [Dkt. # 23]. USCIS then reviews the application and decides whether it should be granted or denied. If the application is granted, the individual is permitted to stay in the United States. If USCIS determines that it cannot grant the application, it will notify the individual of that decision, and what happens next depends on whether the applicant was legally ("in-status") or illegally ("out-of-status") in the United States at the time the asylum application was filed. Def.'s SOF ¶¶ 2, 6.

Asylum applicants who are in-status are sent what is called a Notice of Intent to Deny ("NOID"). *Id.* ¶ 16. The NOID explains that USCIS cannot approve the asylum application, and it notifies the applicant that he or she has sixteen days to respond to the NOID by submitting additional information and supporting documents. *Id.* ¶¶ 17–18; Pl.'s Statement of Material Facts not in Dispute ("Pl.'s SOF") ¶ 15 [Dkt. # 18]. If, after the submission of additional material, USCIS continues to believe the asylum application should be denied, the asylum officer ("AO") assigned to the case (subject to approval by the Supervisory AO) will advise the alien

that the application has been denied. Def.'s SOF ¶ 19. An in-status alien whose application has been denied does not have any right to further review of the denial. *Id.* ¶ 20.

If the applicant is out-of-status, on the other hand, the AO prepares what is called an "Assessment to Refer" ("Assessment") instead of a NOID. The Assessment includes the AO's recommendation that the application be denied and that the out-of-status applicant be referred to the immigration court for removal proceedings. Def.'s SOF ¶ 8; Pl.'s SOF ¶¶ 2–5. The Assessment also includes the reasoning underlying the AO's recommendation. Pl.'s SOF ¶ 8.

After the AO drafts the Assessment, the Supervisory AO reviews and initials the document. Def.'s SOF ¶ 8; Pl.'s SOF ¶ 2. The Assessment is then placed in the asylum applicant's file, and the file is transferred to the DHS lawyer who will represent the government at the immigration court proceeding. Def.'s SOF ¶ 9; Pl.'s SOF ¶ 4. The Assessment is not provided to the asylum applicant. Def.'s SOF ¶ 9. Instead, USCIS generates a Referral Notice, which informs the out-of-status applicant that USCIS cannot grant the asylum request and that the case was referred to the immigration court. *Id.* ¶ 10; Pl.'s SOF ¶ 5. The Referral Notice also informs the applicant of the reasons for the denial of the application and of the right to renew the asylum request before the immigration court, which will conduct a *de novo* review. Def.'s SOF ¶ 12. If the immigration judge denies the asylum application, the alien can appeal that decision to the Board of Immigration Appeals, and then to the Court of Appeals. *Id.* ¶ 15.

At the *de novo* immigration proceeding before the immigration court, the alien's statutory rights are governed by 8 U.S.C. § 1229a. Among those rights, and most pertinent to this case, is the requirement that "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B).

3

A DHS lawyer may – but is not required to – present the Assessment prepared by the AO as evidence at the immigration proceeding.  Pl.'s SOF ¶ 10; Def.'s SOF ¶ 14.  If the lawyer elects to do so, then section 1229a(b)(4)(B) requires that the alien be accorded a reasonable opportunity to examine the Assessment.  Def.'s SOF ¶ 14.

## II.    FACTUAL BACKGROUND

Plaintiff Anteneh Abtew is a native and citizen of Ethiopia.  Pl.'s SOF ¶ 1.  On February 17, 2012, he arrived in the United States on a tourist visa, which has since expired.  *Id.*; Def.'s SOF ¶ 3.  He applied for asylum in the United States with USCIS as an out-of-status applicant,[1] and on October 9, 2012, an AO in the Arlington Asylum Office interviewed him about his application.  Pl.'s SOF ¶ 1.  During the interview, the AO and plaintiff communicated through an interpreter, and the AO took notes.  *Id.*

After the interview, the AO prepared a four-page Assessment.  *Id.* ¶¶ 2–3; Def's SOF ¶ 6.  The Assessment memorialized the AO's recommendation that plaintiff's asylum application should be denied, and after review, the AO's supervisor initialed it.  Pl.'s SOF ¶ 2; Def.'s SOF ¶¶ 6–7.  The Assessment was then placed into plaintiff's file, and that file was transferred to the DHS lawyer who will represent the United States at plaintiff's immigration proceeding.  Pl.'s SOF ¶ 4; Def.'s SOF ¶ 9.  Plaintiff was not provided a copy of the Assessment.  Def.'s SOF ¶ 9.

USCIS then generated a Referral Notice, informing plaintiff of USCIS's decision.  The Referral Notice stated that USCIS reached its decision because of "[m]aterial inconsistency(ies) between [plaintiff's] testimony and application and/or other evidence[,] [m]aterial inconsistency(ies) within [plaintiff's] testimony[,] [and] [l]ack of detail(s) on material points."

---

1    Because plaintiff's visa expired prior to the filing of his application for asylum, he is considered an out-of-status applicant.

Referral Notice, Ex. E to Decl. of Jill Eggleston, Ex. A to Def.'s Mot. ("Referral Notice") [Dkt. # 23-1]; *see also* Pl.'s SOF ¶ 5; Def.'s SOF ¶¶ 10–11. It also informed plaintiff of the next steps in the process: that the asylum case would be referred to an immigration judge for further proceedings, that the referral is not a denial of the asylum application, and that USCIS's initial decision to deny the petition is not binding on the immigration judge, who will conduct a *de novo* review of plaintiff's request. Referral Notice; *see also* Def.'s SOF ¶ 12. Plaintiff's immigration court proceeding is scheduled for February 18, 2015. Pl.'s SOF ¶ 9.

On November 11, 2012, plaintiff submitted a FOIA request to obtain a copy of the Assessment as well as the notes the AO took during plaintiff's interview. Pl.'s FOIA Request, Ex. A to Decl. of Jill Eggleston, Ex. A to Def.'s Mot. [Dkt. # 23-1]. In response, defendant produced ninety-two pages in their entirety and five pages in part, while withholding twenty-three pages in full under FOIA Exemptions 5, 6, 7C, and 7E. Resp. to Pl.'s FOIA Request, Ex. C to Decl. of Jill Eggleston, Ex. A to Def.'s Mot. [Dkt. # 23-1]. Plaintiff appealed the withholdings, Pl.'s FOIA Appeal, Ex. D to Decl. of Jill Eggleston, Ex. A to Def.'s Mot. [Dkt. # 23-1], and that appeal was denied. Appeal Denial Letter, Ex. E to Decl. of Jill Eggleston, Ex. A to Def.'s Mot. [Dkt. # 23-1].

Plaintiff then filed this FOIA action against DHS, seeking to obtain (1) the notes of the AO and (2) the Assessment, Compl. ¶¶ 54–59, as well as a declaration that the continued withholding of those documents violated plaintiff's rights under 8 U.S.C. § 1229a(b). *Id.* ¶¶ 60–65. Defendant subsequently released the notes to plaintiff – rendering Count I moot – but it continued to invoke the deliberative process privilege to withhold the Assessment. Def.'s Answer at 1 [Dkt. # 15]. The parties filed cross-motions for summary judgment, and the Court ordered production of the Assessment for *in camera* review.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

**ANALYSIS**

The cross-motions for summary judgment raise two issues: first, the Court must determine whether defendant properly invoked FOIA Exemption 5 to deny plaintiff's request for

the Assessment completed in connection with his asylum petition, and if so, whether defendant reasonably segregated all nonexempt material from that document (Count II). And second, the Court must decide whether the withholding of the Assessment violates plaintiff's rights under 8 U.S.C. § 1229a(b)(4)(B) (Count III).

## I.      Exemption 5 covers the Assessment in this case.

FOIA Exemption 5 bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). A document may be properly withheld under Exemption 5 only if it satisfies "two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). This Circuit has interpreted Exemption 5 "to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989) (internal quotation marks omitted). The agency seeking to withhold a document bears the burden of showing that it falls within the cited exemption. *Natural Res. Def. Counsel, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

Here, defendant invokes Exemption 5 to justify its withholding of the Assessment, stating that the document falls under the executive deliberative process privilege. Def.'s Mot. at 5. Plaintiff advances nine arguments as to why Exemption 5 cannot be invoked in this case. Pl.'s Mot. at 8–30. These arguments can be organized into two categories: (A) those that claim that the deliberative process privilege, and therefore Exemption 5, do not cover the Assessment; and

(B) those that posit that even if the Assessment is covered by the deliberative process privilege, defendant still cannot invoke Exemption 5 to justify its withholding the Assessment.[2]  *Id.*  Neither category of arguments withstands scrutiny.

### A. The Assessment falls within Exemption 5 because it is protected by the deliberative process privilege.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the [g]overnment."  *Klamath*, 532 U.S. at 8–9 (internal quotation marks and citations omitted).  As a result, it only "protects agency documents that are both predecisional and deliberative."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *see also McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).  This Circuit has held that "a document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"  *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  As the D.C. Circuit has stated, documents fall within the purview of the deliberative process privilege "only if they 'reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy."  *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2009), quoting *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981).

---

2      Plaintiff does not contest that the Assessment satisfies the first condition of Exemption 5 – that the document withheld be an inter-agency or intra-agency memorandum or letter.  *See* Pl.'s Mot. at 8–30.  As a result, the Court finds that requirement is satisfied in this case.

Applying that framework here, the Court finds that the Assessment is predecisional and deliberative, and that it therefore falls under the deliberative process privilege. In a declaration submitted along with defendant's cross-motion for summary judgment, Jill A. Eggleston – the Assistant Center Director in the FOIA and Privacy Act Unit, National Records Center, USCIS – explains that the Assessment at issue in this case is a document that "predates USCIS's decision to not grant asylum to the Plaintiff," and that "[t]he document forms the basis for the decision to not grant the Plaintiff asylum and instead refer him to an immigration judge for removal proceedings." Decl. of Jill A. Eggleston ("Eggleston Decl."), Ex. A to Def.'s Mot. ¶¶ 1, 17 [Dkt. # 23-1].[3] She also explains that the AO writes the Assessment "in narrative form, and explains the officer's concerns, discusses possible legal insufficiencies in the application, and the reasons for the decision to refer the case to the immigration court," which makes it an "essential part of the USCIS deliberative process that leads to the ultimate determination to deny an alien's application for asylum" and to instead refer the out-of-status applicant for removal proceedings. *Id.* ¶ 17.

In other words, the Eggleston declaration verifies that the AO writes the Assessment before a final decision is made; that the Assessment is an essential tool in making that decision;

---

[3] Plaintiff argues that the Court cannot rely on the Eggleston Declaration because Eggleston did not state that she has any personal knowledge of the procedures inside an asylum office or that she read the Assessment in this case. Pl.'s Opp. to Def.'s Mot. ("Pl.'s Opp.") at 4 [Dkt. # 26]. But as another court in this district previously explained, the "extent of Eggleston's knowledge of the asylum process is largely irrelevant. What matters is her capacity to explain the legal basis for the defendant's withholding of the assessment under the FOIA." *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 19 (D.D.C. 2013). Moreover, the last paragraph of the declaration explains that the Assessment is fully described in the declaration, that she is familiar with the matters described in the declaration, and that she can "attest to the accuracy of the document descriptions and applicability of the FOIA exemptions asserted." Eggleston Decl. ¶ 20. This is sufficient for the Court to be able to rely on the declaration. *See Anguimate*, 918 F. Supp. 2d at 19.

and that the Assessment includes the AO's personal thoughts about the merits of the asylum case. It is therefore both predecisional and deliberative, bringing it under the protection of the deliberative process privilege.[4] *See Abramyan v. U.S. Dep't of Homeland Sec.*, No. 12-1064, 2013 WL 6247338, at *6 (D.D.C. Dec. 4, 2013) (holding that the Assessment to Refer in that

---

[4] Plaintiff argues that the Assessment is not deliberative because it does not reflect the give-and-take of the consultative process, since the AO writes the document on his or her own. Pl.'s Opp. at 4–5, 11–12. But this is an overly narrow view of what can be part of the deliberative process. The Assessment transmits the AO's thoughts to a supervisory official and it is a step leading to the issuance of a decision; just because it includes the "give," but not the "take," does not take it outside the scope of the conversation. And as plaintiff acknowledges, protecting the give-and-take of the consultative process is only one of the reasons for the privilege, and a document is considered deliberative if it includes recommendations for how a decision should be made, which the Assessment does. *See Coastal States*, 617 F.2d at 866.

Similarly, plaintiff's argument that deliberative process privilege should not apply to this case because the frequent disclosure of Assessments in immigration courts cuts against the need to protect the internal discussions of AO officers also fails. Pl.'s Opp. at 5, 12–13; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply") at 1, 3, 16 [Dkt. # 25]. Putting aside the realization that just because a privilege is waived in one context does not mean that it is less important in another context, the Court cannot force disclosure under FOIA on this ground alone. As another court in this district has recognized, the D.C. Circuit has instructed district courts not "to 'second-guess . . . congressional judgment'" that a document is subject to the protections of the deliberative process privilege "'on a case-by-case basis'; rather, once it is determined that the two elements of the deliberative process privilege are satisfied, the judicial inquiry is complete." *Anguimate*, 918 F. Supp. 2d at 20, quoting *McKinley*, 647 F.3d at 339.

case was both predecisional and deliberative); *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 18–21 (D.D.C. 2013) (same).[5]

Plaintiff's arguments do not alter that conclusion. First, he argues that the Assessment is a final, post-decision document because it was initialed by the Supervisory AO and sent to a DHS lawyer who would represent the government in plaintiff's removal proceeding before the immigration court. Thus, he contends that the Assessment is the document that "disposes" of plaintiff's request for asylum to the extent that it is before USCIS. Pl.'s Mot. at 18–19. But the document cannot be postdecisional in the literal sense of the word because the AO drafted it before the final decision was made, and the requirement that the Supervisory AO review the Assessment does not somehow transform it into a "final agency" decision just because the supervisor initialed it; the Supervisory AO's initials are not just a "rubber stamp." *See Abramyan*, 2013 WL 6247338, at *6. Moreover, the Assessment does not actually "dispose" of plaintiff's asylum petition. It is the Decision Letter – in this case, the Referral Notice – that

---

5    Plaintiff argues that *Anguimate* and *Abramyan* are distinguishable because at the time the courts found that the Assessments at issue in those cases were protected by the deliberative process privilege and therefore properly withheld under Exemption 5, the plaintiffs in those cases had already been granted asylum by the immigration court. Pl.'s Mot. at 9–10; Pl.'s Opp. at 9–11. But that procedural posture does not distinguish the legal question in those cases from the one in front of this Court: although in *Anguimate* and *Abramyan* the procedural posture guaranteed that the government would not later introduce the Assessment before the immigration court, the government has not yet used – and may ultimately decide not to use – the Assessment at issue here in plaintiff's immigration proceeding. As a result, 8 U.S.C. § 1229a has not been implicated as of the date of the decision of this case and, despite plaintiff's arguments to the contrary, defendant has not adopted the Assessment as its final decision. The Court therefore finds the cases to be persuasive in resolving plaintiff's claims in this case. Indeed, the distinction indicates that plaintiff may very well receive a copy of the Assessment in the future without any action by this Court.

officially disposes of the asylum petition on behalf of USCIS.[6]  Eggleston Decl. ¶ 17 ("The Agency's final decision is the Referral Notice, which is signed by the [Supervisory AO] for the Director of Asylum Office.").

The cases plaintiff relies on to support his point that the Assessment is the final decision that disposes of the case do not support his position.  *See* Pl.'s Mot. at 18–20.  It is true that the Supreme Court has held that Exemption 5 cannot be invoked to withhold documents that must be disclosed under section 552(a)(2)(A), *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), because they are "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."  5 U.S.C. § 552(a)(2)(A); *see also* Pl.'s Mot. at 18–20.  But the cases plaintiff cites applying that principle involve either a decision not to institute judicial proceedings, therefore "adjudicating" the merits of the case, *see Rockwell Int'l Corp. v. U.S. DOJ*, 235 F.3d 598, 603 (D.C. Cir. 2001) (dealing with a document that memorialized the decision not to prosecute a U.S. Attorney), or the actual adjudication of a case, resulting in a finding of liability that could only be displaced if successful on appeal.  *See Am. Mail Line, Ltd. v. Gulick*, 411 F.2d 696 (D.C. Cir. 1969) (involving a case where the Maritime Subsidy Board ordered the plaintiff to refund $3 million in subsidies); *Nat'l Prison Project of Am. Civil*

---

6      Plaintiff argues that there is a factual dispute as to whether the Assessment or the Referral Notice is the final decision by USCIS with respect to plaintiff's asylum petition.  Pl.'s Opp. at 2–3; Pl.'s Reply at 10.  But what constitutes a "final decision" is not a factual question; it a legal one that can be properly decided by this Court.  And the evidence before this Court indicates that the Referral Notice is the final decision, not the Assessment.  The Referral Notice was written after USCIS made the final decision to deny plaintiff's request, and it notified plaintiff of that decision and his appeal rights.    The Assessment, on the other hand, contains the recommendations of an AO on what the final decision about plaintiff's asylum request should be, it was written before the final decision was made, and – as discussed more below – it was not adopted as or incorporated into USCIS's final decision.  Accordingly, the Court finds that the Referral Notice was the final decision in this case.  This conclusion is not altered just because the Referral Notice is created "by checking boxes on a computer."  Pl.'s Opp. at 5.

*Liberties Union Found., Inc. v. Sigler*, 390 F. Supp. 789 (D.D.C. 1975) (finding that a written denial of parole is a final order for purposes of FOIA). Neither of those situations is present here: the denial of plaintiff's asylum application initiates and does not conclude judicial proceedings and, although the AO investigated plaintiff's asylum request and compared different factual claims, it does not rise to the level of an "adjudication" because the matter will be determined *de novo* in the immigration court.

Moreover, the other three cases to which plaintiff refers deal with documents that set forth the agency's interpretation of its regulations or statutes in the context of a particular set of facts. *See Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983); *Coastal States*, 617 F.2d at 854; *Tax Analysts & Advocates v. IRS*, 362 F. Supp. 1298 (D.D.C. 1973). The documents were prepared by higher-level officials and created the internal agency "law" that guided the decision-making process of lower-level officials. But a recommendation that an asylum petition be denied does not set out "law" for AOs to apply in future cases or an interpretation of an ambiguous statutory provision. It is a recommendation as to how USCIS should proceed with a particular application, and therefore there is no concern in this case that the agency is developing "secret law" that it is trying to hide from the public. *Compare Coastal States*, 617 F.2d at 868 (explaining that the documents at issue in that case were not protected by the deliberative process privilege because they were "not advice to a superior, nor [were] they suggested dispositions of a case," and instead they were "akin to a 'resource' opinion about the applicability of existing policy to a certain state of facts, like examples in a manual, to be contrasted to a factual or strategic advice giving opinion"). Furthermore, the Assessment is not a higher-level official telling a lower-level official how to exercise his or her discretion: it is a recommendation that

flows from the lower-level employee to a higher-level official. As a result, those cases offer no guidance here.

And finally, the Supreme Court's holding in *NLRB v. Sears, Roebuck & Co.* – the case that established the rule that Exemption 5 cannot justify withholding documents that must be released under section 552(a)(2)(A) – actually supports the continued withholding of the Assessment under Exemption 5 in this case. In *Sears*, the Supreme Court addressed whether an Advice and Appeals Memorandum ("AAM") issued by the General Counsel of the National Labor Relations Board ("NLRB") regarding whether he would file a complaint based on a private party's report of a potential NLRA violation could be withheld as an intra-agency memorandum under Exemption 5 or whether it was a "final opinion" as defined in 5 U.S.C. § 552(a)(2)(A). 421 U.S. at 136. The Court held that an AAM that memorialized the decision to not file a complaint was a final agency opinion because it adjudicated the potential issue and foreclosed any potential judicial proceedings unless the party seeking legal action successfully appealed the General Counsel's decision. *Id.* at 155–59. But the Court found that an AAM that agreed to file a complaint was not a final agency decision, and therefore could be protected by Exemption 5, because the decision did not mark the end of the case, but merely allowed the claim to proceed in a judicial forum. *Id.* at 159–60.

Here, the Assessment is similar to the AAM that authorized the filing of an NLRA complaint: the Assessment does not mark the end of plaintiff's asylum petition or subject him to a final determination of his status that can only be challenged on appeal. Instead, it requires the case to go forward to the immigration court for removal proceedings and a *de novo* determination of plaintiff's asylum petition by that judge. Accordingly, the Court finds that the Assessment is not a document that is required to be disclosed under section 552(a)(2)(A) and

therefore that the section has no impact on defendant's ability to invoke Exemption 5 to withhold the Assessment in this case.

Plaintiff's second argument – that, even if the Assessment was predecisional at one time, it lost that status when it was adopted as the position of the agency, Pl.'s Mot. at 20–21 – also fails. There is nothing in the record that supports the conclusion that the Assessment was adopted as the agency's final decision. As an initial point, it does not automatically follow that just because USCIS rejected plaintiff's request for asylum, it formally or informally adopted the Assessment as its final decision.[7] *Compare Am. Soc'y of Pension Actuaries v. IRS*, 746 F. Supp. 188, 191 (D.D.C. 1990) ("[T]he simple fact that an intra-agency deliberative memorandum reaches the same conclusion as the ultimate decision-maker provides no guarantee that the memorandum represents the views actually adopted by the government."); *see also id.* (noting that certain documents that were deliberative were nonetheless available under FOIA because the government adopted the $666 million dollar figure and "when . . . the government states a budget estimate with numerical specificity, the public is entitled to presume that a particular set of calculations and assumptions underlie the estimate," even if not specifically mentioned in the final order). The Referral Notice – which informed plaintiff of USCIS's decision to deny his request – does not mention or incorporate the Assessment, *see* Referral Notice, and there is no evidence to show that, other than adopting the general recommendation to deny plaintiff's

---

7    For this reason, the Court is not persuaded by plaintiff's argument that defendant's statement of material facts in dispute supports his contention that the Assessment is the final decision of USCIS:   "When this assessment was approved by [the AO's supervisor, the supervisor] initialed it, and *it became USCIS's decision* that Abtew's asylum application should be addressed in [immigration [sic] court." Pl.'s Opp. at 2, quoting Def.'s SOF ¶ 8.   But the statement quoted does not say that the Assessment was the final decision as plaintiff suggests; instead, the statement provides that the recommendation to deny plaintiff's asylum request, which is set forth in the Assessment, became the agency's final decision, but not necessarily the underlying reasons.

asylum request at this stage, the agency adopted all of the reasons that the AO included in the Assessment.[8]  *Cf. Coastal States*, 617 F.2d at 866 (citation omitted) (noting that the deliberative process privilege, among other things, is designed "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action").  Instead, the Referral Notice provided its own explanation for the denial of plaintiff's asylum request.  *See* Referral Notice.  As a result, the Assessment did not lose its protected status when USCIS issued the Referral Notice.[9]  *See Sears*, 421 U.S. at 161 (emphasis added) (explaining that "if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," the memorandum loses its protected status under Exemption 5).

Furthermore, plaintiff's reasoning that the Assessment was adopted as the official agency position because it is now in the hands of the DHS lawyer who is responsible for representing the government at plaintiff's immigration proceeding is one step ahead of the facts.  His argument is premised on a quotation taken from *Coastal States*:  "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealing with the public."  Pl.'s Mot. at 21,

---

8        For this reason, *Tax Analysts*, 362 F. Supp. at 1303–05 (dealing with IRS letter rulings), and *Badran v. DOJ*, 652 F. Supp. 1437, 1439 (N.D. Ill. 1987) (addressing INS's decision to set a bond amount), are distinguishable because the documents sought were expressly relied on in making the final agency decision in those cases.

9        Plaintiff's comparison of a NOID and an Assessment is unpersuasive.  The NOID is issued to an asylum applicant who makes the request at the time he or she is still legally within the country.  It is a final decision, save the appeal process, and does not result in a *de novo* immigration court proceeding.  Put differently, the NOID itself is the agency's final decision.  As a result, it would not be covered by the deliberative process privilege, making a comparison between it and an Assessment of limited value here.

quoting *Coastal States*, 617 F.2d at 866. Plaintiff thus maintains that "[i]f the DHS uses a document in Immigration Court, the document is public." *Id.* But the document has not been used in immigration court as of the date of this opinion, and the claim that it will be used in the future is speculative. A DHS lawyer is not required to introduce an Assessment at the removal proceeding.[10] The Assessment therefore retains its predecisional and deliberative status, making it subject to the protections of the deliberative process privilege and permitting defendant to assert Exemption 5 to justify its withholding.

**B. Plaintiff's remaining arguments for why the Court should not allow defendant to invoke FOIA Exemption 5 to withhold the Assessment are unpersuasive.**

Plaintiff offers seven reasons why Exemption 5 cannot be invoked to withhold the Assessment in this case, but none of them alter the result.

First, plaintiff argues that documents that are routinely available through civil discovery "must also be disclosed under FOIA." Pl.'s Mot. at 8; Pl.'s Opp. to Def.'s Mot. ("Pl.'s Opp.") at 4 [Dkt. # 26]; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply") at 5–6 [Dkt. # 25]. Although plaintiff is correct that "the parameters of Exemption 5 are determined by the reference to the protections available to litigants in civil discovery," *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996), the deliberative process privilege protects against disclosure of a document in civil discovery.[11] As a result, the Court's conclusion that the deliberative process privilege applies to the Assessment forecloses this argument.

---

10    Similarly, plaintiff's argument that the government cannot argue that the Assessment is not final here because it may later argue that the Assessment is authoritative and should carry weight in the immigration proceeding is unpersuasive. *See* Pl.'s Mot. at 12; Pl.'s Reply at 10. In any event, if the Assessment is expressly relied upon, it will be produced.

11    Plaintiff cannot get around this conclusion by characterizing his FOIA request as one for "alleged 'prior inconsistent statement' or a transcript of a deposition," Pl.'s Reply at 5, because it is not a verbatim transcript of plaintiff's interview. *See* Eggleston Decl. ¶ 17.

Plaintiff's second argument is that 8 U.S.C. § 1229a(b) blocks invocation of Exemption 5 because that "statute compels the DHS to share the assessment with" plaintiff before it is offered into evidence, and FOIA's exemptions may not block a disclosure that is statutorily required. Pl.'s Mot. at 9–10. But plaintiff's argument is once more premature. Section 1229a(b)(4)(B) provides that, at the immigration proceeding, an "alien shall have a reasonable opportunity to examine the evidence against the alien." 8 U.S.C. § 1229a(b)(4)(B). Any "right" that attaches under that section exists because the evidence is, or will be, introduced; it does not exist in the abstract because the government might introduce something. Section 1229a(b)(4)(B) therefore has no relevance in deciding whether defendant may invoke Exemption 5.[12]

Plaintiff's third argument fails for similar reasons. Plaintiff asserts that "[t]he DHS is planning to use the Assessment in Immigration Court in the future; therefore it has waived

---

12    In support of this argument, plaintiff directs the Court to *DOJ v. Julian*. 486 U.S. 1, 14 (1988). In that case, the Supreme Court found that neither FOIA Exemption 3 nor 5 could be invoked to prevent an individual from obtaining access to his presentence report: Exemption 3 did not apply because the two statutes cited as prohibiting disclosure of the presentence report actually required its disclosure to the defendant, save three categories of information; and Exemption 5 did not apply be there was no recognized privilege against disclosure of a presentence report to the person that it was about. *Id.* at 7–14. That case is distinguishable on two grounds. First, the Assessment is not withheld under Exemption 3, so discussion of whether another statute prohibits or requires its disclosure is not relevant. But even if it were, as discussed above, section 1229a(b)(4)(B) requires disclosure of "evidence against" the alien, which means that, as a prerequisite to the invocation of that provision, evidence must have been offered at the immigration proceeding. And second, as this Court found above, there is a privilege against disclosure of the Assessment that justifies the invocation of Exemption 5 in this case. Section 1229a(b)(4)(B)'s requirement is consistent with that finding because, to the extent that the Assessment is introduced into evidence and therefore triggers that section's disclosure requirement, defendant would have waived the privilege and its ability to invoke Exemption 5. Plaintiff's reliance on *Julian* is therefore misplaced. Similarly, plaintiff cannot rely on the discussion in *DOJ v. Tax Analysts*, 492 U.S. 136 (1989), where the Supreme Court refused to imply a FOIA exemption on the ground that another statute governed the disclosure of the documents sought. *See* Pl.'s Reply at 6, quoting *Tax Analysts*, 492 U.S. at 154; *see also* Pl.'s Opp. at 16. Defendant does not justify its withholding in this case on the ground that section 1229a(b)(4)(B) trumps FOIA; it argues that the deliberative process privilege protects that document under Exemption 5 unless and until that privilege is waived..

whatever privilege may have attached." Pl.'s Mot. at 10–16; Pl.'s Reply at 6–7. But it is axiomatic that a party does not waive a privilege by intending to take an action in the future; privilege is waived only when that action is actually taken. As a result, plaintiff cannot rely on the principle that voluntary disclosures may waive privileges because defendant has not made any voluntary disclosure or taken any action that would waive the deliberative process privilege at this time, and all of plaintiff's arguments relating to defendant's alleged waiver of the privilege are cast in the future tense.[13] *See* Pl.'s Mot. at 10 ("DHS states *if* the Assessment is

---

[13]    For this reason, plaintiff's argument that defendant cannot unilaterally use the Assessment and then claim the privilege must fail: Defendant has not yet attempted to use the Assessment against plaintiff in immigration court, *see* Pl.'s Mot. at 11 ("Defendant plans to use the Assessment . . . ."), which makes the cases plaintiff relies on inapplicable. *See United States v. Nobles*, 422 U.S. 225 (1975) (calling an investigator to testify waived the privilege); *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) (permitting disclosure of tapes introduced at trial); *In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 1999) (questioning whether the disclosure of advice from an attorney at a grand jury proceeding waived privilege); *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988) (finding that the corporation's prior disclosure of privileged material in settlement discussions waived the privilege and prevented its assertion in a later case); *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) (involving disclosure of privileged information in book); *In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C. Cir. 1984) (noting that prior disclosure of privileged material prevented invocation of the privilege in later litigation); *Cooper v. U.S. Dep't of Navy*, 594 F.2d 484 (5th Cir. 1979) (same); *Fidelity Nat'l Fin. v. Nat'l Union Fire Ins. Co.*, No. 9-0140, 2011 WL 13580, at *1 (S.D. Cal. Jan. 4, 2011) (finding no waiver when privileged material is shared with others as part of a joint strategy); *Nat'l Immigration Project of the Nat'l Lawyers Guild v. DHS*, 842 F. Supp. 2d 720 (S.D.N.Y. 2012) (noting that privilege is waived when the privileged material is referred to and relied on at the appellate stage); *SEC v. Lavin*, 937 F. Supp. 23 (D.D.C. 1996), *rev'd* 111 F.3d 921 (D.C. Cir. 1997) (finding waiver of the privilege where communications were knowingly taped, held by other entities, and never sought, but D.C. Circuit reversed); *Fiumare v. Higgins*, 572 F. Supp. 1093 (D.N.H. 1983) (noting that prior disclosure of privileged material prevented invocation of the privilege in later litigation); *Cooper v. IRS*, 450 F. Supp. 752 (D.D.C. 1977) (same).

    And the other cases plaintiff relies on involve situations where previously privileged documents lose privileged status and protection under FOIA because they are incorporated into the agency's policy. *See Nat'l Council of La Raza v. DOJ*, 411 F.3d 350 (2d Cir. 2005) (permitting disclosure of a formerly privileged memorandum because repeated references to it led to tis incorporation into DOJ policy); *Brennan Ctr. for Justice at NYU Sch. of Law v. DOJ*, No. 09-8756, 2011 WL 4001146, at *7 (S.D.N.Y. Aug. 30, 2011), *rev'd in part on other grounds* 697 F.3d 184 (2d Cir. 2012) (same). Incorporation of the Assessment did not occur in this case.

used . . . ;" "*if* defendant argues . . . ;" "the Assessment *will be given* to plaintiff Mr. Abtew, *in the event* it is used in court") (emphasis added).

Plaintiff's fourth argument is that defendant should be judicially estopped from asserting the deliberative process privilege in this case because the government has consistently taken the position before immigration courts that the Assessment can be a useful and valuable tool in determining the credibility of the asylum applicant. Pl.'s Mot. at 17–18; Pl.'s Reply at 7–9. This argument fails for the same reason the waiver claims are unavailing.

Judicial estoppel is an equitable rule that provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). It is meant "to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citations and internal quotation marks omitted). Those concerns are not present here: the fact that DHS may choose to waive a privilege – or even regularly chooses to waive that privilege – is not inconsistent with maintaining the position that the material is privileged in the first place. A party should not be estopped from asserting a privilege initially just because it may later waive that privilege if it finds it in its interest to do so. Here, defendant has not yet waived the privilege that covers the Assessment, and what it may or may not do in the future does not operate as estoppel.

Plaintiff's fifth argument echoes his judicial estoppel points: that an agency which is inconsistent is not entitled to deference by the courts. Pl.'s Mot. at 21–22; Pl.'s Reply at 10–11.

As examples of defendant's inconsistent positions, plaintiff states that (1) "DHS frequently provided assessments to asylum applicants in the past," (2) "DHS delivered the notes of the asylum officer to Mr. Abtew," changing its position that the notes were exempt, and (3) DHS's training manuals, that are included on its website, informs AOs that an asylum applicant "may submit a Freedom of Information Act [(FOIA)] request to obtain a copy of an assessment (and other information in the file)." Pl.'s Mot. at 21–23 (citations omitted); *see also* Pl.'s Opp. at 13; Pl.'s Reply at 10–11. But plaintiff offers no evidence to support his first contention, and as the Court has already noted, the fact that the Assessment may be revealed in litigation later does not bear upon the validity of the exemption.

Similarly, the training manuals that plaintiff cites do not support a conclusion that defendant is being inconsistent in its position regarding the availability of the Assessment under FOIA. The training manuals alert AOs to the fact that an asylum applicant "may *submit*" a FOIA request to obtain the Assessment. They do not indicate that the request will be honored without contest. Finally, it is not unusual for a party to modify its position in litigation. And if plaintiff has concerns about defendant's good faith, the Court has conducted its own *in camera* review of the Assessment, and it finds no reason to disturb the agency's characterization of the document as deliberative.[14]

---

14    Plaintiff argues that notes of an AO and the Assessment are similar, and therefore if the notes are not exempt, there is no reason to find the Assessment exempt. Pl.'s Opp. at 10–11, 13–14. But that logic does not add up. The notes a person takes during an interview do not necessarily include the interviewer's analysis or subjective opinion about the veracity or consistency of what the interviewee is saying. The Assessment, on the other hand, includes that type of subjective analysis, which is why the Court found it protected by the deliberative process privilege. And to the extent that the Assessment includes facts that are also included in the notes that have been disclosed, the Assessment can still be protected so long as the Court finds that the facts in the Assessment are so interwoven with the subjective analysis of the AO that they are necessarily deliberative in and of themselves. As described more fully below, the Court makes that finding in this case.

Plaintiff's final two arguments are essentially policy arguments as to why the Court should not allow defendant to invoke Exemption 5 in this case: that invocation of Exemption 5 threatens plaintiff's rights under 8 U.S.C. § 1229a(b), Pl.'s Mot. at 23–26; Pl.'s Reply at 11, and that the "integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts." Pl.'s Mot. at 27–30.

Once again, any argument that plaintiff's rights under section 1229a(b) are threatened by the invocation of Exemption 5 is premature. Section 1229a(b)(4)(B) provides an alien with "reasonable opportunity to examine the evidence against him," 8 U.S.C. § 1229a(b)(4)(B); it does not provide him with the right to obtain evidence that *might* be used against him in advance.[15] Similarly, plaintiff's additional section 1229a(b) arguments about fundamental

---

15      *Singh v. Holder*, 405 F. App'x 193 (9th Cir. 2010), *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674 (9th Cir. 2005), *Al Khouri v. Ashcroft*, 362 F.3d 461 (8th Cir. 2004), and *Cunanan v. INS*, 856 F.2d 1373 (9th Cir. 1988), are distinguishable on that ground. *See* Pl.'s Mot. at 24, 26. Moreover, plaintiff's consistent characterization of defendant's statements to mean that defendant *will* give the Assessment to plaintiff in the future misconstrues defendant's pleadings. *See, e.g.*, Pl.'s Reply at 11 ("DHS agrees that 8 U.S.C. § 1229a(b) gives rights to Abtew, and that eventually, DHS shall give [the Assessment] to him. Why not give it to him now?"). Although defendant acknowledges that section 1229a(b) gives plaintiff rights in his immigration proceeding that it must honor *if* it decides to use the Assessment, its acknowledgement that the Assessment will be provided is explicitly conditioned on a decision to actually use that Assessment in the proceeding. *See* Def.'s Mot. at 8; Def.'s SOF ¶ 14; Pl.'s SOF ¶ 11. That decision has not yet been made. Def.'s Mot. at 7.

fairness do not negate the applicability of the FOIA exemption to a document that may not ever be introduced at the immigration proceeding.[16]

The Court recognizes the importance of the civil and criminal discovery mechanisms that plaintiff itemizes in his pleadings, *see* Pl.'s Mot. at 27–30; Pl.'s Reply at 12, but he will be afforded due process and discovery rights at the immigration hearing, including, if appropriate, a right to the Assessment under section 1229a(b)(4)(B). The analogy to civil discovery rules is inapposite since a work product privilege is recognized in that context as well, and the protections plaintiff lists that are offered to a criminal defendant arise in the context of an indictment and subsequent trial – not in advance of the initiation of court proceedings.[17]

---

16    Plaintiff cites *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010) in support of his contention that fundamental fairness requires defendant to release the Assessment now. Pl.'s Mot. at 25. But *Dent* is distinguishable from this case because it involved a different provision of Title 8, which provides an alien with the right to "access . . . the alien's visa or other entry document, if any, and any other records and documents not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States." 8 U.S.C. § 1229a(c)(2)(B). Moreover, the fundamental fairness discussions in *Al Khouri*, 362 F.3d at 464, and *Hernandez-Guadarrama*, 394 F.3d at 682, have no relevance in this case because any injury resulting to plaintiff from not permitting him enough time to review evidence or cross-examine witnesses against him to ensure fairness at his immigration proceeding is speculative at this time. *See Singh*, 405 F. App'x at 193 (noting that an alien may obtain a continuance, if needed, to review evidence presented against him at an immigration proceeding).

17    Moreover, plaintiff is incorrect about the scope of discovery in the criminal context: for example, grand jury witnesses do not automatically get transcripts of their testimony.

As a result, the Court is unpersuaded by plaintiff's arguments that defendant cannot invoke Exemption 5 as a justification for withholding the deliberative portions of the Assessment.[18]

## II.    There are reasonably segregable portions of the Assessment that defendant must disclose.

Plaintiff argues in the alternative that, even if the document is properly withheld, the segregable facts contained in it are not deliberative and must be disclosed to him. Pl.'s Reply at 12–14. Defendant states that the facts included in the Assessment are so interwoven with the deliberative portions of that document that they cannot be reasonably segregated and are therefore properly withheld. Def.'s Mot. at 4–5; Eggleston Decl. ¶ 17. The Court ordered production of the Assessment for *in camera* review in order to resolve this dispute. Apr. 29, 2014 Minute Entry.

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This Circuit has held that any "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

After reviewing the Assessment *in camera*, the Court concludes that the first six paragraphs simply recite and summarize the facts that plaintiff presented to the AO during his

---

18    The Court notes, though, that this case presents a unique situation where the document at issue may have significant repercussions for plaintiff if it is used at his immigration proceeding. Based on the potential significant impact that the document may have on plaintiff's immigration status, as well as the strong likelihood that the Assessment will be introduced at plaintiff's immigration proceeding and that such use would in fact waive the deliberative process privilege while simultaneously triggering the protection afforded to plaintiff by section 1229a(b)(4)(B), the Court encourages defendant to not delay in providing the Assessment to plaintiff if it ultimately decides it will be used in the immigration proceeding.

asylum application interview. Those paragraphs do not include any analysis or impressions, and they do not reflect the AO's deliberative process: although the document does not purport to be a verbatim rendition of the interview, and there may have been some streamlining involved, the summary does not involve the sort of culling of facts from a large universe that could be characterized as deliberative. *See Ancient Coin Collection Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (noting that factual summaries may reflect the predecisional, deliberative process where they indicate "an exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations"). The paragraphs are therefore not protected by Exemption 5, and they are easily segregated from the privileged portions of the Assessment that follow. So, the first six paragraphs of the document must be disclosed to plaintiff.

The remaining portions of the Assessment, however, are properly withheld under Exemption 5. Any facts contained in those paragraphs are interwoven with the AO's reasoning and recommended disposition, and they cannot be reasonably segregated from the privileged material. Thus, defendant may continue to withhold the remaining portions of the Assessment under Exemption 5.

### III.    Plaintiff's claim that defendant's failure to disclose the Assessment violates 8 U.S.C. § 1229a(b) is not ripe.

Count III of the complaint requests that this Court find that defendant violated plaintiff's rights under 8 U.S.C. § 1229a(b)(4)(B) by failing to provide him with a copy of the Assessment. The parties disagree as to whether that section creates a private cause of action, Def.'s Mot. at 7; Pl.'s Opp. at 16, and defendant also asserts that this count should be dismissed as premature. Def.'s Mot. at 1. Because this claim is not ripe, it will be dismissed, and the Court need not reach the issue of whether plaintiff has a private cause of action under section 1229a.

Ripeness is a two-pronged inquiry:  first, courts consider "the 'fitness of the issues for judicial decision,'" and second, they consider "the extent to which withholding a decision will cause 'hardship to the parties.'"  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  Here, plaintiff's rights under section 1229a(b)(4)(B) are not "fit for judicial decision" because, as indicated above, they have not yet been triggered.  Defendant has not yet sought to introduce the Assessment as evidence against plaintiff at the immigration proceeding or even indicated that it will do so.  And it is entirely speculative that plaintiff will suffer any harm because he has to wait; at this point, we do not know whether plaintiff will be entitled to review the document, and how much time he will be given if he is.  As a result, the Court finds that Count III of the complaint is not ripe and should be dismissed.

## CONCLUSION

Because the Assessment is covered by the deliberative process privilege and because that privilege has not been waived as of the date of this opinion, the Court finds that defendant properly withheld the document under FOIA Exemption 5. But it also finds that the first six paragraphs of the document are not deliberative and that they are reasonably segregable from any protected information, so defendant must therefore release those paragraphs to plaintiff. The Court will therefore grant defendant's motion for summary judgment in part and deny it in part, while also granting plaintiff's motion for summary judgment in part and denying it in part with respect to Count II.

Additionally, the Court finds that Count III of the complaint is premature because the rights plaintiff seeks to protect have not yet been triggered. As a result, the Court will dismiss Count III on ripeness grounds. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: June 13, 2014